WICKER, Judge.
Michael Joseph Janik appeals an order transferring custody litigation to Georgia. The issue is whether Louisiana or Georgia has jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act, La.R.S. 13:1701 et seq. We affirm, amend in part, and stay the proceedings below.
Matthew was born to Janik and his wife, Winifred Mitchell Janik, both domiciled in Jefferson Parish, on June 19, 1983. They separated physically on May 30, 1984; and Winifred filed suit for a separation on June 28,1984. This pleading and all subsequent pleadings until August 5, 1988 were in the 24th Judicial District Court for the Parish of Jefferson. They obtained a divorce on June 21, 1985. The divorce judgment awarded joint custody of Matthew to his parents and outlined certain procedures regarding sharing of custody, notice, and the like.
On July 24, 1986, Winifred moved to terminate or reduce Michael’s visitation, alleging sexual abuse by Michael. Michael moved to modify the joint custody judgment on September 18, 1986. Four hearings on Winifred’s rule were scheduled pending investigation of the abuse charges by Louisiana authorities. In the meantime, Michael charged Winifred with contempt on March 19, 1987, for her alleged failure to permit visitation.
Winifred and Matthew moved to Georgia on March 26, 1987, without giving the sixty-day notice to Michael required by the custody judgment. She moved to terminate joint custody and modify visitation alleging her move to Georgia. According to Michael, she refused to give him either an address or a telephone number where he could contact Matthew or exercise his visitation, also in violation of the custody judgment. On May 6,1987, Michael filed a rule for custody and contempt.
The accumulated motions, including Winifred’s accusations of sexual abuse, were heard on June 16,1987. The court ordered Michael to have custody of Matthew one week per month, but it also ordered Michael to undergo psychiatric therapy and to sleep on the living room couch during Matthew’s visits. Michael’s contempt rules against Winifred were dismissed.
According to Winifred, Matthew, sometime between this hearing and January of 1988, made additional claims of sexual abuse. She refused to let Michael pick up Matthew in Georgia at his regularly-scheduled visitation. Michael filed a rule for contempt on January 13,1988, and a rule to modify custody on March 17, 1988. Winifred countered in April with a rule to terminate joint custody, for sole custody, and to eliminate or restrict visitation. That rule was scheduled for April 14, 1988, but was continued pending a decision by the trial judge on whether or not to view a videotape made by the Georgia child welfare authorities interviewing Matthew about the alleged sexual abuse.
On August 5, 1988, Winifred filed suit in Georgia to obtain sole custody. This was the first pleading filed outside of Jefferson Parish. She also filed exceptions to the jurisdiction of the court in the pending Jefferson Parish proceedings which were scheduled for August 10, 1989.
The trial judge decided only the legal issue, without hearing any testimony, of which state properly had jurisdiction of this matter. He ruled in favor of Georgia’s jurisdiction on October 3, 1988:
the Court finds that the Declinatory Exception of Lack of Subject Matter Jurisdiction should be maintained and, alternatively, finds that the Motion to Transfer, Forum-Non Conveniens, should be granted, because this Court believes that jurisdiction properly belongs to the Superior Court of Henry County, State of Georgia, or alternatively, that the jurisdiction should be transferred to the Superior Court of Henry County, State of *617 Georgia, in that it is a more appropriate forum to litigate the custody issue....
Michael argues that the trial court erred in granting the exception of lack of subject matter jurisdiction, in granting a motion to transfer in the alternative, and in concluding that the Georgia court is a more appropriate forum for the determination of custody.
The Uniform Child Custody Jurisdiction Act’s provisions, adopted by all states and the District of Columbia, were designed to guide the court in making determinations of jurisdiction where more than one state arguably had jurisdiction over the matter.
R.S. 13:1701:
[[Image here]]
(5) “Home state” means the state in which the child immediately preceeding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.
[[Image here]]
R.S. 13:1702. Jurisdiction
A.A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child’s home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child’s present or future care, protection, training, and personal relationships; or
[[Image here]]
R.S. 13:1705. Simultaneous proceedings in other states
A. A court of this state shall not exercise its jurisdiction under this Part if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this Part, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.
B. Before hearing the petition in a custody proceeding the court shall examine the pleadings and other information supplied by the parties under Section 1708 and shall consult the child custody registry established under Section 1715 concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state it shall direct an inquiry to the state court administrator or other appropriate official of the other state.
C. If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with Sections 1718 through 1721. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.
R.S. 13:1706. Inconvenient forum
A. A court which has jurisdiction under this Part to make an initial or modifi *618 cation decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
B. A finding of inconvenient forum may be made upon the court’s own motion or upon motion of a party or a curator ad hoc or other representative of the child.
C. In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
(1) If another state is or recently was the child’s home state.
(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.
(3) If substantial evidence concerning the child’s present or future care, protection, training, and personal relationships is more readily available in another state.
(4) If the parties have agreed on another forum which is no less appropriate, and
(5) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in Section 1700.
D. Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.
E. If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.
F. The court may decline to exercise its jurisdiction under this Part if a custody determination is incidental to an action for divorce or another proceeding while retaining jurisdiction over the divorce or other proceeding.
G. If it appears to the court that it is clearly an inappropriate forum it may require the party who commenced the proceedings to pay, in addition to the costs of the proceedings in this state, necessary travel and other expenses, including attorneys’ fees, incurred by other parties or their witnesses. Payment is to be made to the clerk of the court for remittance to the proper party.
H. Upon dismissal or stay of proceedings under this Section the court shall inform the court found to be the more appropriate forum of this fact, or if the court which would have jurisdiction in the other state is not certainly known, shall transmit the information to the court administrator or other appropriate official for forwarding to the appropriate court.
I. Any communication received from another state informing this state of a finding of inconvenient forum because a court of this state is the more appropriate forum shall be filed in the custody registry of the appropriate court. Upon assuming jurisdiction the court of this state shall inform the original court of this fact.
R.S. 13:1707. Jurisdiction declined by reason of conduct
A. If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances.
B. Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from *619 the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction if this is just and proper under the circumstances.
C. In appropriate cases a court dismissing a petition under this Section may . charge the petitioner with necessary travel and other expenses, including attorneys’ fees, incurred by other parties or their witnesses.
Our circuit has previously considered the U.C.C.J.A.
Among the purposes of the Uniform Custody Jurisdiction Law are the intents to avoid jurisdictional competition and conflict, to discourage continuing controversies over child custody, to deter abductions and unilateral removals of children undertaken to obtain custody awards, to avoid relitigation of other states’ custody decisions insofar as feasible, to facilitate enforcement of custody decrees of other states, and to promote and expand the exchange of information, mutual assistance, and cooperation between courts of this and other states concerned with the same child.
In determining whether Louisiana courts should either decline or exercise jurisdiction under the UCJL, it is crucial that each multifaceted and related component of the Act be construed to promote its general purposes....
Ehsani v. Ehsani, 519 So.2d 288, 290 (La.App. 5th Cir.1988), writ den. 520 So.2d 754 (La.1988). (citations omitted).
Several sets of standards to determine jurisdiction are provided by the UCCJA: home state (1702A), significant connection (1702B), inconvenient forum (1706), and wrongful conduct (1707). At the time of the initial decree of permanent custody in connection with the divorce on June 21, 1985, Louisiana unquestionably had jurisdiction under all these standards. Louisiana retained jurisdiction, under all standards, throughout 1985,1986 and most of 1987, during which time the parties filed multiple motions for modification and/or termination and contempt. Even after Winifred and Matthew moved to Georgia in March of 1987, Winifred continued to file pleadings in the pending Louisiana proceedings.
When Matthew moved to Georgia and over the next six months, the jurisdictional weight began to shift. For the first six months after the move, until September 26, 1987, Louisiana remained Matthew’s home state. . As the months passed, however, Matthew’s connections with Louisiana became more attentuated and arguably less convenient, at least for Winifred and Matthew. In September of 1987, Georgia became Matthew’s home state. In addition Matthew developed more and more connections with Georgia, where he and his mother live.
When Winifred filed her August 1988 complaint in Georgia, which comports with all the requirements of the UCCJA so far as notice to the court in Georgia of a pending proceeding in Louisiana (1708), Matthew had lived in Georgia for seventeen months. The parties’ accummulated rules for contempt, modification and the like had not yet been heard. By the time the trial judge ruled on Winifred’s exceptions, Georgia had been Matthew’s home state for over two years and Matthew undoubtedly had significant connections with that state.
We do not approve of Winifred’s move to Georgia without notice to Michael, but the trial judge dismissed rules for contempt based on this action. Michael urges us to apply the wrongful conduct provision of La.R.S. 13:1707, but by its own terms this statute is inapplicable to the facts.
We do not believe that the trial judge’s conclusion is manifestly erroneous. However, the UCCJA has no provision for “transferring” this litigation to Georgia; and the trial judge should have either dismissed or stayed the instant proceedings (1705C and 1706E) or declined to exercise jurisdiction (1705A). To that extent, we amend the trial judge’s ruling to stay the proceedings below and, as amended, af *620 firm. Michael Joseph Jamk must pay the costs of this appeal.
AMENDED AND, AS AMENDED, AFFIRMED.